**Dennis and Susan DERHEIM, Appellants,**

v.

**HENNEPIN COUNTY WELFARE BOARD, DEPARTMENT OF COMMUNITY SERVICES, Appellee.**

**No. 81–2362.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1982.

Decided Sept. 13, 1982.

Allen H. Gibas, Minneapolis, Minn., for appellants.

Thomas L. Johnson, Hennepin County Atty., Robert W. Gyurci, Asst. Hennepin County Atty., Minneapolis, Minn., for appellee.

Before ARNOLD, Circuit Judge, MILLER,[*] Judge, and COLLINSON,[**] Senior District Judge.

ARNOLD, Circuit Judge.

This is an appeal by Dennis and Susan Derheim from the District Court's [1] order dismissing their complaint, which had sought recovery of attorney's fees under the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988. The fees sought were incurred in proceedings before the Minnesota Department of Public Welfare in which the Derheims sought and obtained reissuance of a license as foster parents. A detailed examination of the record before the state agency compels the conclusion that those proceedings were simply not proceedings to enforce 42 U.S.C. § 1983, as alleged by the plaintiffs. We therefore affirm the District Court's dismissal of the complaint, though on grounds different from those set out in the District Court's opinion.

## I.

The relevant facts may be briefly stated. They are taken from the report of the state hearing examiner and appear to be largely uncontested. The Derheims, who had been licensed as foster parents by the State of Minnesota, were granted custody of two young girls on February 10, 1979. The two girls, ages 12 and 13, had previously been incest victims. They exhibited psychological problems related to lack of self-esteem and displayed poor personal grooming. While in the Derheims' care and custody both showed considerable progress. All indications are that the Derheims were exemplary foster parents.

Around August 7, 1979, the Hennepin County Welfare Board received information indicating that Dennis Derheim had once been convicted of assault with intent to rape. On August 17, 1979, the agency received a copy of a deposition purporting to be that of Delmar Derheim, Dennis's older brother, which had been taken in an unrelated matter. The deposition contained statements by Delmar Derheim to the effect that both he and Dennis had been convicted of assault with intent to commit rape in North Dakota in 1965. When confronted with the allegations contained in the deposition, Dennis Derheim attempted to explain the incident to Ms. Hilary Beste of the local welfare agency. He indicated that he did not report the incident when applying for a foster family home license because he did not consider himself guilty of any wrongdoing. The agency then suspended the Derheims' license as a foster home, and the girls were removed from their custody on August 17, 1979, and placed in a shelter for juvenile girls. The agency's position was that this nondisclosure violated its regulations and constituted a breach of the mutual trust which must exist between the state and its licensed foster families.

The plaintiffs were given formal written notification of this action by the agency,

---

[*] The Hon. Jack R. Miller, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

[**] The Hon. William R. Collinson, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

[1]. The Hon. Harry H. MacLaughlin, United States District Judge for the District of Minnesota. The District Court's opinion appears at 524 F.Supp. 1321 (D.Minn.1981).

and a hearing was held on their request that their license be renewed. In the meantime they retained their present attorney to represent them in the administrative proceedings.

The Welfare Department's hearing officer, Jon L. Lunde, filed a report containing detailed factual findings and conclusions of law which were subsequently adopted by the Commissioner. He concluded there was no substantial evidence that Dennis Derheim had been convicted of an assaultive offense, nor had he admitted committing such an offense. What the proof showed, according to the hearing officer, was that in 1965 in McCluskey, North Dakota, Dennis Derheim and two other high school boys were involved in a "parking" incident with a girl who was apparently somewhat younger than they. There was apparently some kissing, at least between Dennis and the girl, and he may have assisted her in repairing a broken zipper.

While no criminal charges were filed based on this incident, juvenile proceedings were instituted against the three young men. These proceedings apparently resulted in their adjudication as delinquents, but the basis for such adjudication is unknown and unknowable. The court records of such action were destroyed after ten years, as is required by North Dakota law. See N.D. Cent.Code § 27–20–54, subsecs. 4 and 5. The hearing examiner concluded that there was no substantial evidence that any assaultive crime had been committed by Dennis Derheim and, moreover, that under either North Dakota or Minnesota law, Derheim should suffer no continuing disability whatsoever because of the juvenile proceeding. See N.D.Cent.Code § 27–16–21; Minn.Stat. § 260.211, subd. 1. Hearing Officer Lunde concluded:

4. Mr. Derheim did fail to report a juvenile court involvement . . . to the Local Welfare Agency although that informa-

tion was requested by it. However, since the act never happened, for purposes of North Dakota law, and since the involvement stemmed from what appears to have been an innocuous juvenile experiment with the opposite sex, the omission cannot be considered to have been a substantial violation of the mutual trust and respect needed to work in partnership with the Local Welfare Agency as contemplated by the Rule to justify non-renewal of the Appellant's license.

Report of the Hearing Examiner, 4.

Based on the examiner's report, the Derheims' license was renewed on February 20, 1980, and the two girls were presumably returned to their custody. On July 8, 1980, the Derheims filed with the agency a petition for award of attorney's fees based on 42 U.S.C. § 1988. This petition was denied by the Commissioner of Public Welfare on the basis of the hearing officer's conclusion that neither state nor federal law empowered him to award attorney's fees. Hearing Officer Lunde specifically noted that "[a]lthough an award of attorneys' fees is authorized in certain proceedings under 42 U.S.C. § 1983, . . . the instant matter did not involve 42 U.S.C. § 1983." Recommended Order Denying Petition for Attorneys' Fees, at 3.

## II.

■ The Derheims then filed the present action in the Federal District Court. The District Court held that state administrative proceedings simply are not proceedings to enforce § 1983. We need not decide whether § 1988 ever allows an award of fees based on state administrative proceedings, because the record in this case clearly shows that these particular administrative proceedings were unconcerned with § 1983, or with the Federal Constitution.[2]

---

2. In order to be certain of our suspicions in this regard, we directed the parties to furnish so much of the state administrative record as they could piece together for this Court's review. It appears that all pleadings and briefs were furnished. The tape of oral testimony was never transcribed and has now been erased. Our review is thus based on a perhaps more complete record than was before the District Court. We think this type of review not inappropriate in this case, since the question presented is purely a matter of legal conclusion.

The appellants assert that a federal constitutional question was presented and pursued before the administrative agency and that they are therefore entitled to prevail on their fee request, citing *New York Gaslight Club v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1979), and *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).[3] The administrative record, however, belies this assertion. First, the Derheims' memorandum of law submitted to the hearing officer focuses only on issues of North Dakota and Minnesota juvenile law. It refers to no federal constitutional issue and cites no federal cases. Second, Hearing Officer Lunde's findings of fact and conclusions make no mention of any federal constitutional issue. Third, the hearing officer's report—a document distinct from the findings and conclusions—refers to no constitutional issue.

■ The Derheims claim that an issue of "substantive due process" was raised and pursued at the agency level. That supposed issue is framed as the second point in an *amicus* brief filed with the Welfare Department by the Minnesota Civil Liberties Union, as follows: "REVOCATION OF A FOSTER CARE LICENSE BASED ON EVIDENCE THAT THE FOSTER PARENT WAS CHARGED WITH AN ASSAULTIVE OFFENSE AS A JUVENILE VIOLATES THE SUBSTANTIVE DUE PROCESS GUARANTEE OF THE FOURTEENTH AMENDMENT." We do not know the extent to which this argument was pursued. A number of cases were cited with little discussion in the *amicus* brief, including *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); *Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1976); *Roe v. Wade*, 410 U.S. 113, 152–153, 93 S.Ct. 705,

726, 35 L.Ed.2d 147 (1973); *Wisconsin v. Yoder*, 406 U.S. 205, 231–233, 92 S.Ct. 1526, 1541–1542, 32 L.Ed.2d 15 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). About all that can be said about these cases is that each established or vindicated an important substantive right under the Constitution, and all probably had something to do with the interests of a family unit as opposed to the state's interests. They do not, however, individually or collectively, even arguably impose the limitation which the appellants suggest on the state's power and obligation to deal with foster children and those whom it has licensed to care for them. We cannot agree that the inclusion of such an issue in an *amicus* brief, not referred to in any of the plaintiffs' own written submissions, was sufficient to convert the Welfare Department hearing into a "proceeding to enforce" 42 U.S.C. § 1983.

Finally, there is the suggestion in both the appellants' briefs and at oral argument, that any violation by a state of a state-created right—such as Mr. Derheim's rights under North Dakota juvenile law which were discussed by the administrative agency—creates a right of action under § 1983. We find this suggestion so clearly without merit as to warrant no discussion.

In sum, because we conclude the state administrative proceedings here at issue were not proceedings to enforce § 1983, the District Court's dismissal of the complaint is

Affirmed.

---

**3.** *New York Gaslight* allowed recovery of fees incurred before a state agency in a proceeding under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The District Court, in rejecting plaintiffs' fee request, noted that resort to the state administrative remedy was expressly required by Title VII, which is not true of actions under 42 U.S.C. § 1983. Our disposition of this case on other grounds makes it unnecessary to decide whether *Gaslight* is distinguishable on this basis. *Maher* approved the award of fees under § 1988 where the plaintiff had prevailed by settlement of a complaint which asserted both federal statutory violations and constitutional claims which were sufficiently substantial to support federal jurisdiction.